Dear State Senator Corn,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Is it unlawful for a state agency to issue a request for proposal andaward a contract for a product or service that includes within itscomponent parts one or more of the individual products or services listedon the State Use Committee's procurement schedule?
¶ 1 Your question requires an analysis of the provisions of law governing the issuance and award of requests for proposals in state purchasing as well as laws governing the State Use program.
 Request for Proposal
¶ 2 A request for proposal in the context of state purchasing is a form of competitive solicitation in which the state seeks a supplier to provide goods or services.
 "Solicitation" means a request or invitation by the State Purchasing Director or a state agency for a supplier to submit a priced offer to sell acquisitions to the state. A solicitation may be an invitation to bid, request for proposal, or a request for quotation[.]
74 O.S.Supp. 2009, § 85.2[74-85.2](34). The term, Request for Proposal ("RFP") is defined in the administrative rules of the Oklahoma Department of Central Services.
 "Request for proposal" means a type of solicitation a state agency or the State Purchasing Director provides to suppliers requesting submission of proposals for acquisitions.
OAC 580:15-2-2 (2010). Responses to a RFP or one of the other types of competitive solicitations are submitted in the form of bids or proposals. 74 O.S.Supp. 2009, § 85.2[74-85.2](3).
¶ 3 Under the Oklahoma State Purchasing Act state agencies are generally required to use competitive solicitations when seeking to make an acquisition of goods or services. Competitive solicitations for acquisitions in excess of $100,000 are awarded through the Oklahoma Department of Central Services ("DCS"). 74 O.S.Supp. 2009, § 85.7 [74-85.7](A). Solicitations for acquisitions between $50,000 and $100,000 may be awarded by DCS or a state agency if so authorized by the State Purchasing Director. See id. Solicitations for acquisitions less than $50,000 are generally awarded by the state agency. OAC 580:15-6-6(c)-(f) (2010). Among the statutory exceptions to the general requirement that state agencies use competitive solicitations when making acquisitions are the provisions creating the State Use Committee. See 74 O.S. 2001 
Supp. 2009, §§ 3001 — 3010.
 The State Use Committee
¶ 4 The State Use Committee exists within the Department of Central Services. 74 O.S.Supp. 2009, § 3001[74-3001](A). Under the statutes creating the State Use Committee, state agencies are required to buy the products and services on the State Use Committee's procurement schedule from vendors which employ individuals with disabilities.[1] See 74 O.S. 2001 Supp. 2009, §§ 3001 — 3010. Specifically, Section 3007, in pertinent part provides the following requirement:
 A. Whenever the State of Oklahoma or any of its agencies intends to procure any product or service included in the procurement schedule, that entity shall secure the product or service from a qualified nonprofit agency providing employment to people with severe disabilities at the fair market price determined by the Committee if the product or service is available within the period required by the entity.
 B. An agency of this state shall not evade the intent and meaning of this section by slight variations from standards adopted by the Department of Central Services.
Id. Procurements made pursuant to the laws governing the State Use program are also exempt from the competitive bid requirements of the Central Purchasing Act.
 Nothing in Sections 3001 et seq. of this title pursuant to purchases of products and services from people with severe disabilities shall be construed to prohibit any department or agency of the state from manufacturing or supplying its own products or services for its own use. Procurements made pursuant to this act shall not be subject to the competitive bid requirements of the Oklahoma Central Purchasing Act, Section 85.1 et seq. of this title.
Id. § 3008 (emphasis added). The administrative rules of the Department of Central Services Central Purchasing Division also require state agencies to make purchases of products and services on the procurement schedule.
 State Use Committee. State agencies shall make acquisitions from suppliers on the State Use Committee procurement schedule regardless of the acquisition purchase price if the supplier's delivery date meets state agency requirements. State Use Committee contracts are mandatory contracts. State agencies shall utilize the State Use Committee procurement schedule to ensure all acquisitions are made pursuant to 74 O.S., Section 3001[74-3001] et seq. If an acquisition is available from both the State Use Committee procurement schedule and the Oklahoma Correctional Industries, the state agency shall make the acquisition from the State Use Committee procurement schedule.
OAC 580:15-6-5(2) (2010).
 Analysis
¶ 5 "When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed." In reCity of Durant v. Cicio, 50 P.3d 218, 221 (Okla. 2002). Subsection 3007(A) of Title 74 is not ambiguous. Whenever the State of Oklahoma or any of its agencies intends to procure any product or service included in the State Use Committee's procurement schedule that entity shall secure the product or service from a State Use contractor. Id. The only exception to this mandate is if the product or service is not available within the period required by the entity. Id. Subsection B of 74 O.S. 2001, § 3007[74-3007] also provides that "[a]n agency of this state shall not evade the intent and meaning of this section by slight variations from standards adopted by the Department of Central Services." Id.
¶ 6 Therefore, first we analyze whether a competitive solicitation for a product or service that includes among its component parts individual products or services listed on the State Use procurement schedule is a slight variation from State Use standards as prohibited by subsection B. While the "standards" referred to in subsection B are not specifically identified, the most reasonable conclusion is that the term refers to the specifications attached to the individual products and services listed on the State Use procurement schedule. Although those specifications are actually established by the State Use Committee and not DCS, [2] the State Use Committee exists within DCS and is supported by staff employed by DCS. See 74 O.S.Supp. 2009, § 3001[74-3001]. For example, the product "chalk" is an item currently listed on the State Use procurement schedule. If the State Use chalk is available only in boxes of ten pieces each and the length of each piece is three inches, a state agency could not evade the State Use program by simply issuing a solicitation for chalk that comes in boxes of twelve with an individual length of four inches.[3] This is an example of the type of solicitation that would constitute the slight variation prohibited by 74 O.S. 2001, § 3007[74-3007](B).
¶ 7 A solicitation for a product or service that merely includes one or more of the individual products or services listed on the State Use procurement schedule is not a slight variation from standards adopted by the State Use Committee and would not fall under the prohibition of subsection B. Therefore, the proper test to apply in determining whether a solicitation by a state agency violates State Use statutes is found within the language of subsection A and turns on whether or not the particular solicitation is for "any product or service included in the procurement schedule." 74 O.S. 2001, § 3007[74-3007](A). This test must be applied to each solicitation on an individual case-by-case basis. With regard to a solicitation for a product or service or combination thereof, which includes within it one or more of the individual products or services listed on the State Use procurement schedule, we offer the following examples to illustrate how the test may be applied.
¶ 8 The procurement schedule currently includes the individual products of pasta, peas and beans, but not the individual product of prepared soup. Therefore a solicitation by a state agency for prepared vegetable noodle soup that includes as ingredients, pasta, peas and beans would not be an evasion of the State Use statutes because the product sought in the solicitation — prepared soup — is not on the procurement schedule.
¶ 9 Another example of a combination of products and services could be a comprehensive computer parts and service purchase. This type of purchase could include computer hardware, software, replacement parts, toner and repair service. While the individual product of new toner cartridges is listed on the procurement schedule, the solicitation would not be a violation of the State Use statutes because comprehensive computer service is not a product or service listed on the schedule.
¶ 10 However, a solicitation that merely combines several individual products or services on the procurement schedule may be a violation. For example, a solicitation for a batch of individual food products which includes pasta, peas and beans along with carrots, potatoes and celery would be a violation because the combination of those items is not a separate product like prepared soup, and three of the individual items are on the procurement schedule. Similarly, a solicitation for a combination package of new toner cartridges, mouse pads, compact discs and computer wrist rests would be a violation because those are all individual products listed on the procurement schedule.
¶ 11 These scenarios are for the purpose of illustration only, and whether or not any given solicitation constitutes an evasion of the intent of the State Use program is a question of fact beyond the scope of an Official Attorney General Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5). Pursuant to the State Use statutes, the determination as to whether any individual solicitation by a state agency is a violation of the intent of the State Use laws is the responsibility of the State Use Committee. "The Committee shall report any violations of the intent of the laws to the Attorney General's office within thirty (30) days oftheir determination of such violations." 74 O.S. 2001, § 3009[74-3009](C) (emphasis added).
 ¶ 12 It is, therefore, the official Opinion of the Attorney General that:
 1. Pursuant to 74 O.S. 2001, § 3007(B) a state agency is prohibited from evading the purchase of individual products or services listed on the State Use Committee's procurement schedule, by issuing a solicitation for products or services that is a slight variation from the standards adopted by the State Use Committee.
 2. The proper test to apply in determining whether a solicitation by a state agency violates State Use statutes is found within the language of subsection A and turns on whether or not the particular solicitation is for "any product or service included in the procurement schedule." 74 O.S. 2001, § 3007(A). For example, a solicitation for prepared soup is not a violation of the intent of the State Use statutes even though it includes individual items on the schedule such as pasta, peas and beans, because the product of prepared soup is not an item on the procurement schedule. Likewise, a solicitation for a comprehensive package of computer parts and services would not violate the intent of the State Use statutes even though it includes an individual item such as toner, because the product/service of comprehensive computer services is not on the procurement schedule.
 3. Whether or not any given solicitation constitutes an evasion of the intent of the State Use program is a question of fact beyond the scope of an Official Attorney General Opinion. See 74 O.S. 2001, § 18b(A)(5).
 4. The determination of whether or not any purchase by a state agency violates the intent of the State Use laws is the responsibility of the State Use Committee. See 74 O.S. 2001, § 3009(C).
W.A. DREW EDMONDSON Attorney General of Oklahoma
RICHARD D. OLDERBAK Assistant Attorney General
[1] For a more detailed description of the history and purpose of the State Use Committee see Attorney General Opinions 06-23 and 09-22.
[2] See 74 O.S. 2001, § 3004[74-3004].
[3] We use the example of the chalk for illustrative purposes only. There may certainly be situations where a slight difference in a product's specifications would be material and justified. *Page 1